**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
YUCEL EDEBALI,

|                                        |                              |
|----------------------------------------|------------------------------|
| Plaintiff,                             | **MEMORANDUM &**             |
|                                        | **ORDER**                    |
| -against-                              | CV 14-7095 (JS) (AKT)        |

BANKERS STANDARD INSURANCE
COMPANY,

Defendant.
-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff Yucel Edebali ("Plaintiff" or "Edebali") brings the instant action against

Defendant Bankers Standard Insurance Company ("Defendant" or "Bankers") seeking damages

in conjunction with an insurance claim filed in the aftermath of "Superstorm Sandy." *See*

*generally* Complaint ("Compl.") [DE 1-2]. Specifically, Plaintiff asserts claims for breach of

contract and violations of New York General Business Law ("GBL") Section 349.[1] *Id.*

Presently before the Court is Defendant's motion to compel Plaintiff to further supplement his

interrogatory responses. *See* DE 35. Plaintiff has not filed any opposition to the motion. For the

reasons that follow, Defendant's motion is GRANTED, in part, and DENIED, in part.

---

[1]    On January 14, 2016, Judge Seybert granted Defendant's motion to dismiss Plaintiff's
claim arising under GBL § 349. *See* DE 36. As such, Plaintiff's only surviving cause of action
is his breach of contract claim.

## II.  LEGAL STANDARDS

### A.  *Federal Rule 26*

Rule 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case."  Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley v. Choice Hotels Int'l*, No. CV 14-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) (recognizing that "the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case.'") (internal citation omitted); *Denim Habit, LLC v. NJC Boston, LLC*, No. 13 CV 6084, 2016 WL 2992124, at *3 (E.D.N.Y. May 23, 2016).  Notably, although Rule 26 still permits a wide range of discovery based upon relevance and proportionality, the "provision authorizing the court . . . to order discovery of any matter relevant to the subject matter involved in the action" has been eliminated.  Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley*, 2015 WL 9413101, at *2 (internal citation omitted).  The rationale behind the elimination of this phrase is the finding that it "has been used by some, incorrectly, to define the scope of discovery."  Rule 26 Advisory Committee Notes to 2015 Amendments.  Thus, Rule 26(b)(1), as amended, although not fundamentally different in scope from the previous version "constitute[s] a reemphasis on the importance of proportionality in discovery but not a substantive change in the law."  *Vaigasi v. Solow Mgmt. Corp.*, No. 11 CIV 5088, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016); *see Robertson v. People Magazine*, No. 14 Civ. 6759, 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015) ("[T]he 2015 amendment [to Rule 26] does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exact-ingly.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ. 1924, 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009)); *Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)); *Denim Habit, LLC*, 2016 WL 2992124, at *3. In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)); *Barbara*, 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes."); *Coggins v. Cnty. of Nassau*, No. 07 Civ. 3624, 2014 WL 495646, at *2 (E.D.N.Y. Feb. 6, 2014) (A district court has "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential.") (internal quotation omitted); *see also Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("[m]otions to compel are left to the court's sound discretion."); *Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

### B. Federal Rule 33

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, "a party may serve on any other party no more than 25 written interrogatories. . . ." Fed. R. Civ. P. 33(a)(1); *see Pegoraro v. Marrero* 281 F.R.D. 122, 128 (S.D.N.Y. 2012). Interrogatories "may relate to any matter that may be inquired into under Rule 26(b) . . . [and] is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. . . ." *Id*. 33(a)(2);

*see Trueman v. New York State Canal Corp.*, No. 1:09-CV-049, 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010) ("Interrogatories, like other discovery devices, may inquire into any discoverable matter, including facts and contentions.").  The general aim of this discovery device is to "expeditiously narrow the scope of the litigation, reduce the element of surprise, serve as admissions for trial, and in a significant matter avoid unnecessary discovery and minimize expense." *Trueman*, 2010 WL 681341, at *2.  To that end, the responding party is required to answer each interrogatory "separately and fully under oath."  Fed. R. Civ. P. 33(b)(3).  Thus, the Rule explicitly requires the responding party to "provide the best answer they can based upon information within their possession." *Trueman*, 2010 WL 681341, at *2 (citing Fed. R. Civ. P. 33(b)(3)).

In order to ensure that each interrogatory is answered "separately" and "fully," *see* Fed. R. Civ. P. 33(b)(3), the responding party is required "to make an inquiry and obtain information to answer the interrogatories which would include obtaining the information to fully and completely answer the interrogatories. . . ." *Upstate Shredding, LLC v. Ne. Ferrous, Inc.*, No. 312 CV 1015, 2016 WL 865299, at *8 (N.D.N.Y. Mar. 2, 2016); *see Zanowic v. Reno*, No. 97 Civ. 5292, 2000 WL 1376251, at *3 n.1 (S.D.N.Y. Sept. 25, 2000) ("In responding to interrogatories . . . a party is under a duty to make a reasonable inquiry concerning the information sought in the interrogatories, and a party's failure to describe his efforts to obtain the information sought . . . renders his responses insufficient."); *Braham v. Perelmuter*, No. 3:15 CV 1094, 2016 WL 1305118, at *3 (D. Conn. Apr. 1, 2016); *In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444, 445 (S.D.N.Y. 2000) ("A party served with interrogatories is obliged to respond . . . not only by providing the information it has, but also the information within its control or otherwise obtainable by it.").  Where a party, despite conducting a diligent

inquiry, is nevertheless unable to provide a responsive answer, any efforts utilized should be set forth in detail to ensure a sufficient response is interposed. *Id.*; *Zanowic*, 2000 WL 1376251, at *3 n.1. Further, "an answer to an interrogatory must be completed within itself and, it should be in a form that may be used at trial . . . [Therefore] [r]eference to depositions, other answers to the interrogatories, other document production, the complaint itself, or any other documents are improper and thus unresponsive." *Trueman*, 2010 WL 681341, at *3; *Poulio v. Paul Arpin Van Lines, Inc.*, 2004 WL 1368869, at *2 (D. Conn. June 14, 2004) (noting that other courts have held that a party may not incorporate deposition testimony or rely upon future depositions in lieu of complete responses to interrogatories); *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 49 (N.D.N.Y. 1997); *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. Jan. 30, 2003); Moore Federal Practice §§ 33.101, 33.103, & 33.106. In addition, "as new information comes into its possession, the responding party has a continuing duty to supplement their responses." *Trueman*, 2010 WL 681341, at *2 (citing Fed. R. Civ. P. 26(e)(1)).

Although a responding party is permitted to object to an interrogatory that it deems to be improper, the grounds for any such objection "must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4); *see Pegoraro*, 281 F.R.D. at 128. It follows that "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse." *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009); *Davidson*, 215 F.R.D. at 77 ("Generalized objections that a discovery request is burdensome without resort to specific reasons is similarly insufficient to justify a refusal to respond.") (quoting *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592–93

(W.D.N.Y. 1996)).  In order to effectively resist providing a response to an interrogatory, a party must show "specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, . . . by submitting affidavits or offering evidence revealing the nature of the burden."  *Pegoraro*, 281 F.R.D. at 128–29 (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)).

## III.    DISCUSSION

On October 28, 2015, Defendant filed the instant motion seeking an order compelling Plaintiff "to further supplement and/or revise his responses to Interrogatories 5, 7 and 8-13 because his supplemental responses do not provide any additional information, and thus, do not sufficiently answer the interrogatories in question."  DE 35 at 2.  Specifically, Defendant asserts that Plaintiff's answers to these interrogatories remain deficient "because they fail to 'state the basis for' the corresponding allegations referenced in the Complaint."  *Id.* at 3.  The phrase "state the basis" as used in Defendant's first set of interrogatories is defined as follows:

> (i) each and every fact discoverable under the rules of this Court that is known to Plaintiff which relates to that subject matter; (ii) the source of Plaintiff's information or knowledge relating to each such fact; (iii) the identity of all persons having knowledge of each such fact; (iv) the identity of each document known to Plaintiff embodying, referring or relating to each such fact; and (v) each event, occurrence and instance on which Plaintiff intends to introduce evidence at trial relating to that fact or subject matter.

*Id.*  Despite this definition, Defendant maintains that "Plaintiff's initial responses and his supplemental responses to the above-referenced Interrogatories are insufficient because they fail to provide much of the information requested, improperly refer to pleadings, documents, and/or contain a number of unsupported assertions."  *Id.*  Plaintiff has not filed any response opposing Defendant's motion.  Likewise, Plaintiff's initial and supplemental responses to interrogatories 5,

7 and 8-13 do not contain objections.  Consequently, at this juncture, any objections are deemed

waived.  Fed. R. Civ. P. 33(b)(4); *see Pegoraro*, 281 F.R.D. at 128.  Therefore, Plaintiff is

required to answer each of these interrogatories "separately" and "fully," *see* Fed. R. Civ. P.

33(b)(3); *Trueman*, 2010 WL 681341, at *2.  The Court will review each purportedly deficient

response in turn.

## A.  <u>Interrogatory No. 5</u>

"State the basis for your claim that Jeffrey Maffuci[2] 'scoffed at the estimated cost of an

alternative premises and represented to the insured that the carrier would procure an alternative

premises,' as alleged in paragraph 21 of the Complaint."[3]

Plaintiff's supplemental answer states that

> After the sandy claim Plaintiff met and provided access to Ace
> representatives for them to be able to conduct their investigations.
> At the second or third meeting, and after Plaintiff realized this will
> not be a quick process with team assigned by Ace to this claim,
> Plaintiff inquired about a replacement premises. Plaintiff was told
> the subject policy had coverage for same and once the claim was
> accepted by Ace had agents who would find a rental property for
> Plaintiff. Thereafter, Plaintiff had a meeting with Mr. Maffucci, who
> at that time agreed that housing included in coverage. However,
> when Plaintiff told Mr. Maffucci the results of Plaintiff's research
> showing houses with similar amenities renting over $100,000 per
> month in off season and around $100,000 per week during summer
> season Mr. Maffucci told Plaintiff and his representative, with a
> cynical attitude, stated that Ace will find one for Plaintiff.

*Id*. at 4.  Defendant argues that this response continues to be deficient because it fails to (1)

"identify the 'Ace representatives' that Plaintiff 'met and provided access . . . to conduct their

investigations;'" and (2) identify or otherwise provide Defendant with the "results of [Plaintiff's]

---

[2]     Jeffrey Maffuci is the insurance company adjuster assigned to Plaintiff's claim.  *See*
Compl. ¶¶ 18-19.

[3]     Although identified as being contained in paragraph 21 of the Complaint, this allegation
is actually set forth in paragraph 19.  Compl. ¶ 19.

research" substantiating the statement that "houses with similar amenities renting over $100,000 per month in off season and around $100,000 per week during summer season." *Id.*

As stated above, Plaintiff, as the responding party, has an obligation to ensure that each interrogatory is answered "separately" and "fully." *See* Fed. R. Civ. P. 33(b)(3). This, in turn, requires Plaintiff "to make an inquiry and obtain information to answer the interrogatories which would include obtaining the information to fully and completely answer the interrogatories. . . ." *Upstate Shredding, LLC*, 2016 WL 865299, at *8; *see Zanowic*, 2000 WL 1376251, at *3 n.1; *Braham*, 2016 WL 1305118, at *3. A complete and full answer includes identifying the source of Plaintiff's information as well as the individuals with knowledge of the relevant facts — where such information neither constitutes attorney work product nor is otherwise privileged. *Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co.*, 12 F.R.D. 531, 538 (S.D.N.Y. 1952) ("discovery of further sources of evidence such as the existence of documents and the identity of persons having knowledge of relevant facts . . . is a well recognized purpose of interrogatories."); *see Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 61 (E.D.N.Y. 2007) (interrogatory seeking "the identity of persons with knowledge [of the facts is] . . . clearly permissible"); *Morgan v. City of New York*, No. 00 Civ. 9172, 2002 WL 1808233, at *3 (S.D.N.Y. Aug. 6, 2002) (directing plaintiff to answer an interrogatory requesting the identity of "every person whom Plaintiff believes has knowledge of any facts concerning Plaintiff's claims in this litigation"); *see also Seven Hanover Assocs., LLC v. Jones Lang LaSalle Americas, Inc.*, No. 04 Civ. 4143, 2005 WL 3358597, at *1 (S.D.N.Y. Dec. 7, 2005) ("Defendant is free to ask for the names of persons with knowledge of the facts. . . ."). The Court finds that Interrogatory No. 5 seeks the factual basis for the assertion that Jeffrey Maffuci purportedly scoffed at the estimated cost of an alternative premises and made a representation that the carrier would

"procure an alternative premises." Based on the provisions of Rule 33 and the applicable case law, Plaintiff must further supplement his answer to this interrogatory to properly identify, to the extent possible, the "Ace representatives" who conducted the investigation as well as the specific sources Plaintiff relied upon to determine that rental prices of homes containing similar amenities to his own were renting for over $100,000 per month in the off season and approximately $100,000 per week during the summer season.

## B. Interrogatory No. 7

"State the basis for your claim that 'the Defendant's denial of Plaintiff's claim for lost rents was based upon illogical, self-serving grounds and in bad faith,' as alleged in paragraph 31 of the Complaint." DE 35 at 4.

Plaintiff's supplemental answer states that

> The allegations in the complaint and illogical, self serving grounds in Defendants various communications speak to this. Notwithstanding, upon information and belief, Ace denied the claim for lost rents for the summer seasons following Sandy by alleging that the subject property was, in sum and substance, not a rental property. However, such an assertion, especially in light of the lack of definition with regard to certain operative terms, defies logic, in that Plaintiff clearly testified Ace [*sic*] and advised that it was his intention to rent the property for the summer seasons. Moreover, it is undisputed that the subject was a secondary home and the lack of prior rentals does not change the nature of the property or the pre-Sandy intent of the Plaintiff to rent the home out for the summer season and engage in expended travel, both international and domestic, and alternative recreation with his family for the season. The intentional disregard of the foregoing by Ace was disingenuous and self-serving.

*Id*. Defendant argues that this response continues to be deficient because: (1) "Plaintiff still refers to 'various communications,' without identifying the details of these communications, i.e., when and with whom these communications occurred;" and (2) Plaintiff's statement that he

"'clearly testified [*sic*] Ace and advised that it was his intention to rent the property for the summer seasons' [ ] is unclear [with respect to] who advised who regarding this intention[.]" *Id.*

After reviewing Plaintiff's supplemental response, the Court finds it to be deficient for much the same reasons as the answer to interrogatory No. 5 since it fails to provide a full and complete response as to the facts on which the allegations and response are premised. Specifically, as Defendant asserts, the answer makes a sweeping statement regarding "Defendants various communications" without properly identifying the nature and detail of these communications — to include the identities of the individuals involved in the communications. Likewise, Plaintiff states that he "testified [ ] and advised that it was his intent to rent the property for the summer seasons" but fails to clarify when the testimony was given, the nature of the testimony and the identities of the individual or individuals he advised concerning this fact. As stated, the source of factual information and the identities of individuals with knowledge are permissible areas of inquiry and require full and complete answers. *See e.g.*, *Upstate Shredding, LLC*, 2016 WL 865299, at *8 (finding defendants' responses deficient since they failed to "identify any individuals who loaded trucks bound for Plaintiffs' facility and [did] not detail any efforts to obtain such information"). Therefore, Plaintiff is directed to further supplement his answer to the extent such information is within his control or is otherwise obtainable. *Braham*, 2016 WL 1305118, at *3 ("A party served with interrogatories is obliged to respond . . . not only by providing the information it has, but also the information within its control or otherwise obtainable by it.").

### C. <u>Interrogatory No. 8</u>

"State the basis for your claim that the appraisal process was invoked as to 'certain portions of the dwelling and other structure claims' and that 'there were a number of items which

were subject to further investigation, were not included in the appraisal process, or were not ripe

for determination . . . at the time of the appraisal,' as alleged in paragraphs 35 and 36 of the

Complaint." DE 35 at 5.

Plaintiff's supplemental answer states that

> The basis for the claim is that there were in fact items that were not
> subject to the appraisal and an inspection in the various Ace
> communications over the claims handling period confirm the
> inconsistencies therein. The claims record is clear in this regard by
> way of a review of the claim correspondence immediately after the
> appraisal from both Ace and its counsel, and then comparing said
> correspondence with that which was transmitted by Ace and its
> counsel as part of Ace's final determination of the claim. It would
> be noted that Ace's position changed drastically and materially with
> regard to what was included in the appraisal process to the point
> where it appeared that Ace's counsel intended to ignore the obvious,
> or displayed a negligent disregard for the claim history.
>
> In addition, from a logical standpoint portions of the loss could not
> be assessed at the time of appraisal, thus could not be included. For
> example, HVAC system could not be checked before the home
> automation was fixed and thus, could not be included in appraisal.
> The cost of landscape lighting repairs could also not be determined
> before home automation was fixed. Damage to low voltage wires in
> and out of the wall could not be determined before the home
> automation system becoming operational, in addition to damage to
> sprinkler wells and control wires could not be checked. Structural
> wind damage claim was also not addressed and still not addressed.
> (this is the issue of windows being out of plum on the second floor
> bar area and them not closing due to wall being crooked after the
> storm).

*Id*. at 5-6. Defendant claims this response is deficient due to Plaintiff's failure to (1) "identify

the details of the[ ] ['various Ace] communications,' i.e., when and with whom these

communications occurred;" (2) provide specific details regarding who made the determination

"that 'portions of the loss could not be assessed at the time of appraisal [and that the] HVAC

system could not be checked before the home automation was fixed. . .'" as well as how this

determination was ultimately made; and (3) provide further specificity surrounding the

statements regarding inability to estimate the cost of repair to landscape lighting and low voltage wiring based upon the inoperability of the home automation system. *Id*. at 6.

Plaintiff's answer to this interrogatory contains a generalized reference to "various Ace communications" allegedly made during the pendency of the insurance claim as well as sweeping assertions as to why inspections regarding the extent of the damage and cost to repair items such as the HVAC system, landscape lighting and low voltage wires could not be ascertained until the home automation system was repaired. DE 35 at 5. However, Plaintiff has not identified the specific individuals and circumstances surrounding the "various Ace communications" to which he refers. Nor does Plaintiff provide specific factual details as to who was involved in making the determination that the extent of the damage and/or cost to repair certain items could not be made until the home automation system itself was fixed as well as how such a determination was made. In light of Plaintiff's claims, these details are relevant and a complete answer to this interrogatory must contain such information. *See* Fed. R. Civ. P. 33(b)(3). Therefore, to the extent such information is within Plaintiff's control or is otherwise obtainable, *see Braham*, 2016 WL 1305118, at *3, he is required to further supplement this response to include this information.

### D.  Interrogatory No. 9

"State the basis for your claim that 'the delay of the claim handling itself, including delayed payments to the insured, which were either undisputed or should have been undisputed, caused additional damages, in that the property remained unpowered, unsecured, and vulnerable for a prolonged period of time' and that 'the vulnerability . . . resulted in the Property being

broken into twice, and severely vandalized,' as alleged in paragraphs 38 and 39 of the Complaint."[4]

Plaintiff's supplemental answer states that

> After Sandy it took an excessively long period of time to accept the coverage. After the carrier called Plaintiff's out of state specialists trying to start the AMX home automation system. After the specialist could not start the system and issued a report saying system was damaged by the surge, instead of accepting the original installers reasonable repair estimate, months were wasted as Ace, upon information and belief, attempted to locate cheaper contractors.
>
> Ace was advised that the subject home automation system was a very special system and Plaintiff's installers being from out of state was the best priced option. This was based upon Plaintiff's own knowledge of his chosen installers, their more than competitive pricing and his own experience with the installation of the system. Plaintiff's specialist worked at a hourly rate 35-40% cheaper than New York companies based upon Plaintiff's own knowledge and due diligence via telephone and internet, as well as conversations with industry professionals. Plaintiff was ignored, and Ace even ignored their own AMX specialist who advised the [*sic*] Ace that Plaintiff's proposal was very reasonable. Upon information and belief, Ace was advised that their own specialist's price would be at least $25-30 thousand more than that. Ace furthermore sent an alarm installer to inspect the premises, despite the fact that the installer confirmed he was unfamiliar with such systems. Plaintiff notified ACE that the alarm panel was "fried" and half of the security cameras were damaged and as a result, the house was vulnerable. Plaintiff could not perform the repairs of the system due to the carrier's "uncompleted investigation into the cost of repairs" at which time the home remained vulnerable.

*Id*. at 6-7. Defendant alleges that this response is insufficient based upon the following: (1) "Plaintiff still does not identify who advised A[ce] . . . when, and the basis for [the] conclusion . . . that the subject home automation system was a very special system and Plaintiff's installers being from out of state was the best priced option;" (2) although Plaintiff's statement that the

---

[4]    Although identified as being contained in paragraphs 38 and 39 of the Complaint, this allegation is actually set forth in paragraphs 39 and 40. Compl. ¶¶ 39-40.

"subject home automation system was a very special system and Plaintiff's installers being from out of state was the best priced option" is "based upon his 'own knowledge, their more than competitive pricing and his own experience with the installation of the system,' Plaintiff fails to explain what this knowledge and/or experience consists of that would allow him to reach that conclusion;" (3) "Plaintiff fails to explain how he knows that 'Plaintiff's installers' have 'competitive pricing;'" (4) "Plaintiff states that his 'specialist worked at a [*sic*] hourly rate 35-40% cheaper than New York companies,' but fails to explain how that figure was calculated, or why the reference to 'New York companies' is relevant;" (5) Plaintiff's contention in (4) which is based "upon his 'own knowledge and due diligence via telephone and internet, as well as conversations with industry processionals' is conclusory because Plaintiff has not provided [Defendant] with the results of this due diligence or identified the specific industry professionals with whom he consulted;" (6) "Plaintiff further states that 'Ace was advised that their own specialist's price would be at least $25-30 thousand more than that,' but fails to identify who advised Ace of this information;" and (7) "Plaintiff provides absolutely no support for his statement that A[ce]'s alarm installer 'confirmed he was unfamiliar with such systems.'" DE 35 at 7.

The Court finds that the Plaintiff's answer to interrogatory No. 9 is deficient for many of the reasons set forth by Defendant. In order to interpose a full and complete answer, Plaintiff has a duty "to make a reasonable inquiry concerning the information sought in the interrogatories . . . ." *Zanowic*, 2000 WL 1376251, at *3 n.1. Further, if "Plaintiff [is] unable to provide [Defendant] with the requested information, Plaintiff [is] required to state, under oath, that he [is] unable to provide the information and set forth the efforts he used to obtain the information." *Kenneth v. Nationwide Mut. Fire Ins. Co.*, No. 03-CV-521F, 2007 WL 3533887, at *18

(W.D.N.Y. Nov. 13, 2007). Plaintiff's generalized assertions and conclusory statements provide little useful fact-based information which belies the purpose of interrogatories in the first instance. *Trueman*, 2010 WL 681341, at *2 (recognizing that the general aim of interrogatories is to "expeditiously narrow the scope of the litigation, reduce the element of surprise, serve as admissions for trial, and in a significant matter avoid unnecessary discovery and minimize expense."). Therefore, Plaintiff is directed to supplement his response to interrogatory No. 9 by providing the supplemental information set forth in items (1) through (6) above. To the extent Plaintiff is unable to do so, he is required to set forth the efforts used to attempt to provide such information.

### E. <u>Interrogatory No. 10</u>

"State the basis for your claim that the 'tubing runs' of the radiant heating and plumbing system required replacement, as alleged in paragraph 46 of the Complaint." DE 35 at 8.

Plaintiff's supplemental answer states that

> Radiant tubing going to and from the manifold was slashed during the course of the theft of copper and brass pipes. Based upon Plaintiff's knowledge and research, and corroborated by industry professionals, Plaintiff asserts it is industry norm is to have one piece runs from and to [*sic*] manifold, especially in older version [*sic*] of the tubing. It is understood that this is due to constant warming up and cooling of this pipes during operation and expansion and retraction rate of the materials being different on the mechanical couplings used to connect this pipes together. As stated above, this was confirmed by a professional engineer, whose report was provided to Ace. This was confirmed by manufacturer who confirmed this, as well as the fact that patched runs would void the warranty. This was further confirmed by Radiant Professionals Alliance (a Nationwide organization) Executive Director commenting on the issue and advising against patching radiant piping (he is also a licensed plumber) and Ace was advised of such.

*Id*. Defendant alleges that this response is insufficient because: (1) "Plaintiff alleges that 'industry norm is to have one piece runs from and to [*sic*] manifold, especially in older version

[*sic*] of the tubing.' Plaintiff alleges that this is '[b]ased upon [his] knowledge and research, and corroborated by industry professionals.' However, Plaintiff does not explain how he would have this knowledge;" (2) Plaintiff has not identified "the research he has done to support th[e] statement [in (1)] nor has he identified the specific industry professionals who corroborated this 'industry norm;'" (3) Plaintiff "fails to identify both the engineer and the manufacturer" who allegedly confirmed that it was "industry norm [ ] to have one piece runs from and to [the] manifold" as well as how the engineer and manufacturer were able to confirm this; and (4) Plaintiff "does not identify who at Radiant Professionals Alliance confirmed the industry norm nor does he identify how that professional reached that conclusion." DE 35 at 8-9.

Similar to Interrogatory No. 9, Plaintiff's response to Interrogatory 10 is general and conclusory and as a result provides little in the way of fact-specific information that would assist Defendant in determining the basis for Plaintiff's allegations and narrowing the scope of this litigation. Indeed, as stated previously, a complete and full answer includes identifying the source of Plaintiff's information as well as the individuals with knowledge of the relevant facts. *See Caldwell-Clements, Inc.*, 12 F.R.D. at 538; *Weiss*, 242 F.R.D. at 61. Further, Plaintiff is required to engage in a proper inquiry in order to provide such information. *Upstate Shredding, LLC*, 2016 WL 865299, at *8; *see Zanowic*, 2000 WL 1376251, at *3 n.1; *Braham*, 2016 WL 1305118, at *3. Plaintiff has not properly disclosed the source of the facts stated nor the identities of those persons or entities, other than Plaintiff, who made such statements. Nor has Plaintiff stated, under oath, that he is not in possession of such information. *See Kenneth*, 2007 WL 3533887, at *18. As such, Plaintiff is directed to supplement his response to Interrogatory No. 10 by providing the information set forth in items (1) through (4) above. To the extent

Plaintiff is unable to do so, he is required to set forth the efforts used in attempting to provide such information.

**F.** **Interrogatory No. 11**

"State the basis for your claim that the period [*sic*] restoration for the radiant heating system establish [*sic*] by Defendant 'and the termination of additional living benefits was predicated upon a frivolous, bad faith, and unsupported assertion that the radiant heating system pipe runs could be patched, as opposed to replaced, and the sham of an insurance company, adjustment/estimate,' as alleged in paragraphs 68 and 69 of the Complaint." DE 35 at 9.

Plaintiff's supplemental answer states that

> The complaint speaks to this, as does the documentation exchanged, the claim file, and the history of the claim. To that end, Plaintiff's experts confirmed the tube runs needs to be replaced as opposed to being patched. ACE has never offered any qualified professional's opinion as to the viability of patching the tubes so as to return the system to its pre-loss condition. ACE assigned the assessment and relied upon a home improvement contractor who, upon information and belief, does window replacements and siding jobs and also claims to do "forensic plumbing investigations." Furthermore, upon information and belief, ACE's "professional" is not a licensed plumber in Suffolk County. Ace did have a licensed plumber inspect the property, who advised Plaintiff verbally that a repair job would not be acceptable to him either. ACE finally provided an "estimate" for the repairs to the radiant heating system, without any details at all, and only "time and materials." This lack of any substantive details further provided a basis for Plaintiff to conclude that Ace's own estimator failed to comprehend the precise manner in which it was to be fixed and as a result provided nothing other than a completely arbitrary figure for time and materials. ACE is in possession of said estimate for the plumbing repairs based upon time and materials and should refer to same. Plaintiff relies upon common sense, professional consultation, and engineering confirmation that patching 2 dozen or so plastic pipes is asking for trouble, in a similar manner as riding on a tire that had 24 plugs or patches will result in failure. Furthermore, Plaintiff complained to ACE with regard to the inadequacy of their own estimate, going so far as to advise ACE that had Plaintiff provided such a cursory estimate, without any details, such would be rejected. It follows that

> since ACE's own professionals could not articulate in any
> substantive way how it ACE asserts that the repairs should be
> properly made, logic precludes ACE from having a good faith belief
> as to how long the repairs should take to complete.
>
> It is believed that the calculation of the period of restoration and
> ACE's termination of additional living benefits corresponding with
> the start of high rental season when the house, was not coincidental
> but rather bad faith. It is believed and concluded from the claim
> history that the termination of additional living, and the denial of
> lost rents, was a calculated attempt to avoid the large losses associate
> with the summer season, estimated at approximately a month.

DE 35 at 9.  Defendant maintains that this response is insufficient since:  (1) "Plaintiff states that

'Plaintiff's experts confirmed the tube runs needs to be replaced,' but he does not specify who

these experts are nor does he explain how those experts reached that conclusion;" and (2)

Plaintiff "'relies upon common sense, professional consultation, and engineering confirmation

that patching 2 dozen or so plastic pipes is asking for trouble, in a similar manner as riding on a

tire that had 24 plugs or patches will result in failure.'  However, Plaintiff fails to explain how he

knows this statement to be true or how he knows it to be common sense and does not identify

what professionals or engineers he consulted to confirm this statement."  DE 35 at 10.

Initially the Court points out that to the extent Plaintiff's answer references the complaint

and other documents it is deficient since "an answer to an interrogatory must be completed

within itself and, it should be in a form that may be used at trial . . . [Therefore] [r]eference to

depositions, other answers to the interrogatories, other document production, the complaint itself,

or any other documents are improper and thus unresponsive." *Trueman*, 2010 WL 681341,

at *3; *Poulio*, 2004 WL 1368869, at *2.  In addition, the response is deficient because it fails to

disclose the identities of the "experts" who allegedly determined the tube runs needed to be

replaced, nor does the response provide any details regarding how this conclusion was reached.

However, the Court finds that Plaintiff need not further supplement the response based on item 2

of Defendant's argument.  Defendant is free to explore the assertion of "bad faith" at Plaintiff's deposition.  Plaintiff is directed to supplement his response to interrogatory No. 11 by providing the supplemental information set forth in item (1) above.  To the extent Plaintiff is unable to do so, he is required to set forth the efforts used in attempting to provide such information.

### G. Interrogatory No. 12

"State the basis for your claim that 'the actual period of restoration to restore the property to its pre-loss condition had Bankers promptly paid for the proper repairs would extended . . . to be at least six to eight months longer and definitively through the Summer Season,' as alleged in paragraph 72 of the Complaint."  DE 35

Plaintiff's supplemental answer states that

> Plaintiff's assertion with regard to the period of restoration is predicated upon the proper repair of radiant tubing [*sic*] requires replacement of the tubing runs. As the subject premises, the tubing is installed under travertine, marble and granite floors which are custom cut slab pieces and tiles. Custom furniture rest on the flooring, in addition to moldings and cabinets which need to be removed prior to the removal and replacement of the radiant heating tubes. Import and fabrication of flooring material takes significant time for the type and quality of materials at the subject premises, in addition to the installation itself. The time period asserted is based upon Plaintiff's own knowledge of construction and renovation and experience in the construction industry, as well as verbal conversations with contractors.

DE 35 at 11.  Defendant asserts that this response is deficient because:  (1) Plaintiff fails to explain how he knows what the proper repairs are or how such a determination was made.  Nor does he provide any basis for the statement that "[i]mport and fabrication of flooring material takes significant time for the type and quality of materials at the subject premises, in addition to the installation itself;" and (2) "Plaintiff does not provide any details of his alleged knowledge or experience that would allow him to come to th[e] conclusion" that "'[t]he time period asserted is

based upon Plaintiff's own knowledge of construction and renovation and experience in the construction industry.'" *Id.*

The Court finds that Plaintiff's answer to this Interrogatory is deficient for the same reasons as Plaintiff's previous answers. Specifically, Plaintiff has failed to provide particularized factual information regarding his actual knowledge of defined areas of the construction and renovation industry which enable him to opine on the proper repairs here as well as the normal timeframe for making such repairs. Therefore, Plaintiff is directed to supplement his response to interrogatory No. 12 by providing the additional information set forth in items (1) and (2) above. To the extent Plaintiff is unable to do so, he is required to set forth the efforts used in attempting to provide such information.

## H.  Interrogatory No. 13

"State the basis for your claim the 'Defendant repeatedly sent unqualified individuals to appraise and adjust the damage at the Property,' as alleged in paragraph 78 of the Complaint." DE 35 at 11.

Plaintiff's supplemental answer states that

> The basis for the claim is the observation of Plaintiff, conversations with the individuals sent to appraise and adjust the damage, and the work product of those individuals, or lack thereof. To that end, Plaintiff met and gave access to many contractors and "specialists" most of which were not able to give estimates or meaningfully participate in the claim in any way due to their lack of experience with the specific subject matter, as was evident by their licensing, actual business they conducted, and conversations with Plaintiff. For example, there was an alarm "professional" looking at the home automation system, a siding guy professional looking at radiant heating system, damage appraiser missing the pools; and a plumber incapable of providing a more specific estimate than an arbitrary figure.

DE 35 at 12. Defendant states that this response is deficient because "Plaintiff alleges he 'met and gave access to many contractors and specialists,' but does not specify who these individuals were. Additionally, he provides no basis to support his allegation that these 'contractors and specialists' 'lack[ed] . . . experience with the specific subject matter.' That this 'was evident by their licensing, actual business they conducted, and conversations with Plaintiff' is conclusory, and thus insufficient." *Id.*

Plaintiff has failed to provide specific factual information regarding the source of the information or the identities of those responsible for reaching the conclusions in Plaintiff's answer. Therefore, Plaintiff is directed to supplement his response to interrogatory No. 13 by providing the names of the individuals sent to appraise the damage (or the names of the companies / entities who dispatched them) and the approximations of these appraisals, the identities of the contractors and specialists who were given access to the premises for estimating purposes (or the companies / entities who dispatched them) and the date of such visits to the premises, the specific inquiry made by the Plaintiff to these individuals to ascertain the nature of their licenses and the results of the same and the sum and substance of their respective conversations with the Plaintiff at the time. To the extent Plaintiff is unable to do so, he is required to set forth the efforts used in attempting to provide such information.

## IV.   C*ONCLUSION*

For the reasons stated in this Memorandum and Order, Defendant's motion to compel is GRANTED, in part, and DENIED, in part. Plaintiff is directed to provide Defendant with supplemental responses that are in compliance with this Order by September 26, 2016. In addition, in light of Judge Seybert's ruling on Defendant's motion to dismiss, the Court is setting

down an in-person Status Conference for September 29, 2016 at 10 a.m. in order to enter the

final discovery schedule.

**SO ORDERED.**

Dated: Central Islip, New York
September 6, 2016

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge