**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
YUCEL EDEBALI,

|  |  |
|---|---|
| Plaintiff, | **MEMORANDUM & ORDER** |
| -against- | CV 14-7095 (JS) (AKT) |
| BANKERS STANDARD INSURANCE COMPANY, |  |
| Defendant. |  |

------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    P̲R̲E̲L̲I̲M̲I̲N̲A̲R̲Y̲ S̲T̲A̲T̲E̲M̲E̲N̲T̲

Plaintiff Yucel Edebali ("Plaintiff" or "Edebali") brings the instant action against Defendant Bankers Standard Insurance Company ("Defendant" or "Bankers Standard") seeking damages in conjunction with an insurance claim filed in the aftermath of "Superstorm Sandy." *See generally* Complaint ("Compl.") [DE 1-2].  Specifically, Plaintiff asserts claims for breach of contract and violations of New York General Business Law ("GBL") Section 349.[1]  *Id.* Presently before the Court is Defendant's motion to quash two subpoenas (the "Subpoenas") served on non-party Brian Gibbons, Esq., Bankers Standard's outside counsel.  *See* DE 50.  For the reasons that follow, Defendant's motion is DENIED, without prejudice.

---

[1]    On January 14, 2016, Judge Seybert granted Defendant's motion to dismiss Plaintiff's claim arising under GBL § 349.  *See* DE 36.  As such, Plaintiff's only surviving cause of action is his breach of contract claim.

## II.   RELEVANT FACTUAL BACKGROUND

The relevant facts are taken from the Complaint, the January 25, 2017 Affirmation of Scott E. Agulnick as well as the Affidavits of Jeffrey Maffucci and Cara DiGiovanna, attached as exhibits to the December 21, 2016 Affirmation of Paul C. Ferland, counsel for Bankers Standard in this action.  All facts are assumed to be true for the purposes of the instant motion.

Plaintiff is the owner of a residential dwelling located at 546 Long Beach Road, Nissequogue, New York 11780 (the "Property").  Compl. ¶ 5.  Plaintiff contracted with Defendant for a homeowner's insurance policy in order to protect the Property against risk of loss, including "physical loss from wind, power surge, vandalism, theft, as well as for lost rents." *Id*. ¶ 6.  In consideration of the premium paid by Plaintiff, Defendant issued Plaintiff a policy "bearing policy number 268-02-80-38" (the "Policy").  *Id*.

On October 29, 2012, Superstorm Sandy ravaged much of the east coast of the United States.  The Property, which was located in the direct path of the storm, sustained significant damage due to wind and power surges.  *Id*. ¶¶ 8-9.  Specifically, as a result of the storm, the Property suffered damages to the following areas:  structure, electronics and home automation systems, HVAC systems, irrigation controls, sprinkler system, exterior lighting and electrical, landscaping, outdoor and indoor swimming pools, bluff stairs and live coral reef.  *Id*. ¶ 10. Based upon the aggregate scope of the damages, the Property was "rendered uninhabitable and unusable."  *Id*. ¶ 11.

After being apprised of the loss (the "Sandy Claim"), Defendant assigned Jeffrey Maffucci ("Maffucci") as "the in-house adjuster, to investigate the Sandy Claim."  December 20, 2016 Affidavit of Jeffrey Maffucci ("Maffucci Aff."), attached as Exhibit ("Ex.") C to the December 21, 2016 Affirmation of Paul C. Ferland ("Ferland Aff.") [DE 50-2], ¶ 4.  In his role

as Defendant's in-house claims adjuster, Maffucci was responsible for "gathering information and advising [Defendant] concerning the scope of the loss and facts that might affect its coverage determination" concerning the Sandy Claim. *Id*. ¶ 5. As part of this information gathering role, Maffucci "requested invoices, estimates, and other documentation from Plaintiff that would support his Sandy Claim." *Id*. ¶ 10. Notwithstanding these requests, Maffucci states that "Plaintiff failed to provide all necessary documentation, and any information he did provide was submitted in piecemeal fashion." *Id*. ¶ 11. In light of the difficulties in collecting complete records from Plaintiff, Defendant "ultimately decided to conduct Plaintiff's examination under oath ("EUO") to clarify the facts of the Sandy loss and establish the components of the Sandy Claim." *Id*. ¶ 11. In order to provide legal advice in conjunction with the pending Sandy Claim (including representing Defendant at Plaintiff's EUO), Defendant retained the law firm of Wade Clark Mulcahy ("WCM"). *Id*. ¶ 12. Despite retaining WCM, Maffucci states that the firm "played no role in the Adjustment of the Sandy Claim during [his] time as the adjuster of the Sandy Claim." *Id*. ¶ 9; *see, e.g.*, December 20, 2016 Affidavit of Brian Gibbons ("Gibbons Aff."), attached as Ex. C to the Ferland Aff. (stating, in part, that Brian Gibbons, Esq., a partner with WCM, was retained in July 2013 as "coverage counsel" and was charged with providing Defendant "legal advice regarding the Sandy Claim" and representing Defendant at Plaintiff's EUO); *but see* January 25, 2017 Affirmation of Scott E. Agulnick ("Agulnick Aff.") [DE 51-1], ¶¶ 7-8 (characterizing Attorney Gibbons' role as a "claims handler" and "point person in the claims process" in light of the "countless communications between Mr. Gibbons and Your Affirmant's office").

During the pendency of the adjustment period for the Sandy Claim, the Property sustained additional damages on two separate occasions — September 28, 2013 and October 5,

2013 — due to vandalism and theft (the "Vandalism Claim").  Compl. ¶¶ 41-42.  These damages consisted of "a direct physical loss to the radiant heating system, HVAC systems, electronics damage and theft, theft of art, small appliances, televisions, damage to furniture [and] copper piping. . . ."  Agulnick Aff. ¶ 6.  Upon receiving notice of this additional claim, Defendant assigned Cara DiGiovanna ("DiGiovanna") "as the in-house adjuster, to investigate the Vandalism Claim."  December 20, 2016 Affidavit of Cara DiGiovanna ("DiGiovanna Aff."), attached as Ex. C to the Ferland Aff., ¶ 5.  Similar to the responsibilities of Maffucci — the in-house adjuster assigned to the Sandy Claim — DiGiovanna "was tasked with gathering information and advising [Defendant] concerning the scope of the vandalism loss and facts that might affect [Defendant's] coverage determination."  *Id*. ¶ 7.  Significantly, DiGiovanna stated that she "supervised, coordinated, and directed the investigation of the vandalism incidents" and that "Mr. Gibbons played no role" in any of these activities.  *Id*. ¶ 11.  Rather, according to DiGiovanna, Attorney Gibbons' "only role . . . was to provide legal advice . . . [and, as such] [h]e never adjusted, investigated, or handled the Vandalism Claim in any way."  *Id*. ¶ 12.

Similar to the characterizations of his involvement as set forth in the Maffucci and DiGiovanna Affidavits, Gibbons himself characterizes his role with respect to the claims process as one limited to "providing legal advice" concerning Defendant's "duties and obligations."  Gibbons Aff. ¶¶ 5-10.  As such, according to Attorney Gibbons, he "never acted as a claims adjuster, but rather, provided legal advice to the claims adjuster assigned by [Defendant] to each claim."  *Id*. ¶ 10; *but see* Agulnick Aff. ¶ 11, Exs. A-C (coverage determination and adjustment letters from Attorney Gibbons to Attorney Agulnick which Plaintiff asserts illustrate that Attorney Gibbons was integral to the "handling of the claims in the ordinary course of business").

4

### III.    APPLICABLE LEGAL STANDARDS

#### A.  *Federal Rule of Civil Procedure 26*

Rule 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case."  Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley v. Choice Hotels Int'l*, No. CV 14-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) (recognizing that "the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case.'") (internal citation omitted); *Denim Habit, LLC v. NJC Boston, LLC*, No. 13 CV 6084, 2016 WL 2992124, at *3 (E.D.N.Y. May 23, 2016).  Notably, although Rule 26 still permits a wide range of discovery based upon relevance and proportionality, the "provision authorizing the court . . . to order discovery of any matter relevant to the subject matter involved in the action" has been eliminated.  Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley*, 2015 WL 9413101, at *2 (internal citation omitted).  The rationale behind the elimination of this phrase is the finding that it "has been used by some, incorrectly, to define the scope of discovery."  Rule 26 Advisory Committee Notes to 2015 Amendments.  Thus, Rule 26(b)(1), as amended, although not fundamentally different in scope from the previous version "constitute[s] a reemphasis on the importance of proportionality in discovery but not a substantive change in the law."  *Vaigasi v. Solow Mgmt. Corp.*, No. 11 CIV 5088, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016); *see Robertson v. People Magazine*, No. 14 Civ. 6759, 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015) ("[T]he 2015 amendment [to Rule 26] does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exact-ingly.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ. 1924, 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009)); *Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)); *Denim Habit, LLC*, 2016 WL 2992124, at *3.  In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)); *Barbara*, 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes."); *Coggins v. Cnty. of Nassau*, No. 07 Civ. 3624, 2014 WL 495646, at *2 (E.D.N.Y. Feb. 6, 2014) (A district court has "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential.") (internal quotation omitted); *see also Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("[m]otions to compel are left to the court's sound discretion."); *Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

### B.  Federal Rule of Civil Procedure 45

Rule 45 of the Federal Rules of Civil Procedure governs the procedure when an individual or entity seeks to quash or modify a subpoena.  Specifically, Rule 45(d) provides, in pertinent part, that

> (A) *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> (i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.

(B) *When Permitted*. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

Fed. R. Civ. P. 45(d)(3)(A), (B).

"A determination to grant or deny . . . a motion to quash a subpoena is discretionary." *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012); *see In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 68 (2d Cir. 2003); *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 460 (E.D.N.Y. 2011) ("Motions to quash subpoenas under the Rules are 'entrusted to the sound discretion of the district court.'") (quoting *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003)); *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) ("The decision whether to quash or modify a subpoena is committed to the sound direction of the trial court.") (citations omitted).

"The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003); *see also Salvatorie Studios, Int'l v. Mako's Inc.*, 01 Civ. 4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001). Relevance in this context is subject to the over-arching relevance requirement outlined in Rule 26(b)(1). *See In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011)

("Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)");

*see Ford Motor Credit Co. v. Meehan*, No. CV 05-4807, 2008 WL 2746373, at *4

(E.D.N.Y. July 11, 2008); *During v. City Univ. of New York*, No. 05 Civ. 6992, 2006 WL

2192843, at *82 (S.D.N.Y. Aug. 1, 2006).

### C.  The Attorney-Client Privilege

The attorney-client privilege safeguards confidentiality and transparent communications

between client and counsel.  *See, e.g.*, *United States v. Sabbeth*, 34 F. Supp. 2d 144, 152

(E.D.N.Y. 1999) (noting "the overriding importance of the attorney-client privilege"); *see also*

*In re Grand Jury Investigation*, 399 F.3d 527, 531 (2d Cir. 2005) ("[t]he purpose of the attorney-

client privilege is to promote open communication between attorneys and their clients so that

fully informed legal advice may be given") (internal quotation omitted); Restatement (Third) of

the Law Governing Lawyers § 68 cmt. c (2000) ("The rationale for the [attorney-client] privilege

is that confidentiality enhances the value of client-lawyer communications and hence the efficacy

of legal services.").

The privilege applies to "communications (1) between a client and his or her attorney (2)

that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or

providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re*

*Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)); *McNamee v. Clemens*, No. 09 Civ. 1647, 2014

WL 6606661, at *2 (E.D.N.Y. Nov. 19, 2014).[2]  "The burden of establishing the existence of an

---

[2]      In light of the fact that the Court's subject matter jurisdiction is predicated on diversity
grounds (as opposed to federal question), the elements and scope of the attorney-client privilege
are governed by New York law.  *See AP Links, LLC v. Russ*, No. CV 09-5437, 2012 WL
3096024, at *2 (E.D.N.Y. July 30, 2012) ("Since the basis for subject matter jurisdiction in this
action is diversity of parties, the attorney-client privilege is governed by New York State law.")
(citing *Aiossa v. Bank of America*, No. CV 10–1275, 2011 WL 4026902, at *3 (E.D.N.Y. Sept.
12, 2011)); *105 St. Assocs., LLC v. Greenwich Ins. Co.*, No. 05 CIV. 9938, 2006 WL 3230292, at
*3 (S.D.N.Y. Nov. 7, 2006) ("As jurisdiction in this case is based on diversity, the New York

attorney-client privilege, in all of its elements, rests with the party asserting it." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO,* 119 F.3d 210, 214 (2d Cir. 1997); *see Mejia*, 655 F.3d at 132; *Abu Dhabi Commercial Bank*, 2011 WL 4716334, at *1 ("Under New York Law, the party asserting either the attorney-client privilege or attorney work product protection has the 'heavy burden' of proving that privilege or protection applies to the documents or communications at issue.").  Significantly, the privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395-96, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981) (citations omitted); *Franzone v. Lask*, No. 14 Civ. 3043, 2015 WL 1379066, at *6 (S.D.N.Y. Mar. 26, 2015) (citing *Upjohn* 449 U.S. at 395-96); *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 391 (S.D.N.Y. Jan. 21, 2015) ("However, we are unaware of any case law suggesting that a person's collection of information is protected merely because the person harbors a plan to provide the information later to an attorney—particularly where there is no proof that the attorney sought to have the individual collect the information at issue.  Indeed, case law holds just the opposite.") (collecting cases).

---

law of privilege applies."); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 CIV. 7508, 2011 WL 4716334, at *3 (S.D.N.Y. Oct. 3, 2011), *report and recommendation adopted*, 2011 WL 4716335 (S.D.N.Y. Oct. 7, 2011) ("state law governs the question of attorney-client privilege in a diversity action"); *see also* N.Y. C.P.L.R. § 4503(a)(1) (codifying doctrine of attorney-client privilege).  "Nevertheless, the distinction between New York and federal law on attorney-client privilege is quite indistinguishable, as the law intersects in all of its facets, and are viewed interchangeably."  *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 124 (N.D.N.Y. 2007); *see Bank of Am., N.A. v. Terra Nova Ins. Co. Ltd.*, 211 F. Supp. 2d 493 (S.D.N.Y. 2002) ("New York law governing attorney-client privilege is generally similar to accepted federal doctrine.") (citations omitted).

In the insurance context, "'documents prepared in the ordinary course of an insurer's business (which by its nature, involves claim investigation and analysis) are not protected from discovery,' even when they are provided to or prepared by counsel." *866 E. 164th St., LLC v. Union Mut. Fire Ins. Co.*, No. 16-CV-03678, 2016 WL 6901321, at *1 (S.D.N.Y. Nov. 23, 2016) (internal alteration omitted) (quoting *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271, 2006 WL 3771010, at *5 (S.D.N.Y. Dec. 15, 2006) (internal quotation marks and brackets omitted) (citing cases)); *see Melworm v. Encompass Indem. Co.*, 37 Misc. 3d 389, 391, 951 N.Y.S.2d 829, 831–32 (Sup. Ct. 2012), *aff'd*, 112 A.D.3d 794, 977 N.Y.S.2d 321 (2013) ("[T]he payment or rejection of claims is a part of the regular business of an insurance company. Consequently, reports which aid it in the process of deciding which of the two indicated actions to pursue are made in the regular course of its business. Reports prepared by insurance investigators, adjusters, or *attorneys* [emphasis added] before the decision is made to pay or reject a claim are thus not privileged and are discoverable. . . .") (internal citation omitted) (alteration in original).

However, the corollary to this proposition is that "[j]ust because counsel is engaged as coverage counsel, it does not mean that counsel may not provide legal advice to his or her client, which would be subject to attorney-client privilege." *Fox Paine & Co., LLC v. Houston Cas. Co.*, 51 Misc. 3d 1212(A), 37 N.Y.S.3d 207 (N.Y. Sup. 2016) (citing *Reliance Ins. Co. v. Am. Lintex Corp.*, No. 00 CIV 5568, 2001 WL 604080 (S.D.N.Y. June 1, 2001)); *see 105 St. Assocs., LLC*, 2006 WL 3230292, at *3 ("Although [i]n the context of insurance litigation, attorney-client communications have been denied protection when it appears the attorney is merely *investigating* a claim on a policy, when such communications relate to *legal advice*, they do not lose the protection of the attorney-client privilege simply because they involve an insurance claim.")

(internal citation omitted) (emphasis in original); *Tudor Ins. Co. v. McKenna Assocs.*, No. 01 CIV. 0115, 2003 WL 21488058, at *3 (S.D.N.Y. June 25, 2003) (recognizing that "communications between Tudor [the insurance carrier] and Thurm & Heller [its coverage counsel] that relate to the provision of legal advice are privileged and need not be disclosed."); *All Waste Sys., Inc. v. Gulf Ins. Co.*, 295 A.D.2d 379, 380, 743 N.Y.S.2d 535, 536 (2002) (finding attorney-client privilege applied to coverage opinion reports and draft disclaimer letters prepared for insurer by outside counsel); *570 Smith St. Corp. v. Seneca Ins. Co.*, 148 A.D.3d 561, 50 N.Y.S.3d 57, 57 (App. Div. 2017) (following inspection of documents *in camera* in an action involving insurer's failure to pay benefits due under an insurance policy, the court determined that attorney-client privilege applied to certain documents prepared by counsel since "the correspondence between defendant and its counsel . . . [was] predominantly of a legal character").

Thus, much like any other context in which a party asserts the attorney-client privilege, the Court must engage in a "fact-specific determination, most often requiring in camera review." *Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.*, 191 Misc. 2d 154, 157, 738 N.Y.S.2d 179, 184 (Sup. Ct. 2002) (quoting *Spectrum Sys. Int'l Corp. v. Chemical Bank*, 78 N.Y.2d 371, 378, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991)); *Roswell Park Cancer Inst. Corp. v. Sodexo Am., LLC*, 68 A.D.3d 1720, 1721, 891 N.Y.S.2d 827, 829 (2009) (same).

## IV.   DISCUSSION

Defendant's motion seeks to quash two subpoenas served upon non-party Brian Gibbons, Esq. of the law firm of Wade Clark Mulcahy.  *See generally* Def.'s Motion.  The Subpoena *duces tecum* seeks the production of seven broad categories of documents relating to the investigation of Plaintiff's insurance claims while the Subpoena *ad testificandum* requests that

Attorney Gibbons testify regarding "[t]he factual background and circumstances related to all aspects of the investigation undertaken by [WCM], with regard to Plaintiff's insurance claims for all dates prior to the time which Defendant had reasonable grounds to reject the insurance claim(s). . . ." *See* Agulnick Affm., Ex. E (Subpoena *duces tecum*, Attachment A), (Subpoena *ad testificandum*, Attachment B).

The *gravamen* of Defendant's argument as to why the Subpoenas served upon non-party Brian Gibbons., Esq. should be quashed is that they would require the disclosure of documents and/or communications which are subject to the attorney-client privilege. *See* Memorandum of Law in Support of Bankers Standard's Motion to Quash Subpoenas of Brian Gibbons and for a Protective Order ("Def.'s Mem.") at 5 ("the Gibbons Subpoenas improperly seek material that is protected by the attorney-client privilege").[3] Plaintiff disputes this assertion and instead avers that Defendant "is unable to establish the applicability of the narrowly construed [attorney-client] privilege doctrine, as the payment or rejection of claims is a part of the regular business of an insurance company. . . ."). Plaintiff's Memorandum of Law in Opposition ("Pl.'s Opp'n") at 10.

The Court has undertaken a thorough review of the parties' papers submitted in support of and in opposition to the motion and, having done so, is constrained to find that the parties have put the proverbial cart before the horse. Indeed, at this juncture, the Court is hampered by the fact that neither party has supplied it with sufficient factual information concerning the particular documents at issue in order to assist the Court in rendering a determination whether the attorney-client privilege applies here. To date, Defendant has not produced the required

---

[3]    Although Defendant initially interposed an argument based upon improper notice, *see* Def.'s Mem. at 9-10, it appears that this issue is moot. *See* Pl.'s Opp'n at 16 (indicating that the Subpoenas were re-served upon Defendant's counsel in accordance with Fed. R. Civ. P. 45(a)(4) after both counsel conferred and Defendant's counsel indicated he was authorized to accept service on behalf of Brian Gibbons.

privilege log in this case particularizing the documents it seeks to withhold based on privilege. Nor has either party requested an *in camera* review of the documents to enable the Court to engage in a proper case-specific assessment whether the attorney-client privilege applies here in the first instance.

As stated above, the "burden of establishing attorney-client or work product privilege is on the party asserting the respective privilege." *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) (citing *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)). In order to satisfy this burden, the party asserting the privilege is required to provide an adequate privilege log for review by opposing counsel and the court. *See Aurora Loan Servs., Inc.*, 499 F. Supp. 2d at 479 (recognizing that "[f]ailure to furnish an adequate privilege log is grounds for rejecting a claim of attorney client privilege"); *Burns v. Imagine Films Entm't, Inc.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996) ("The party claiming the privilege must supply opposing counsel with sufficient information to assess the applicability of the privilege or protection, without revealing information which is privileged or protected."); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 228 (E.D.N.Y. 2007) ("To the extent Credit Lyonnais withholds documents and responses on the basis of asserted attorney-client and/or attorney work-product privileges, Credit Lyonnais shall provide a privilege log identifying those documents and responses and the basis for withholding them."); *see also* Fed. R. Civ. P. 26(b)(5) (setting forth information that a withholding party must provide in order to "enable other parties to assess the claim").

Therefore,

> [t]o properly demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the

> document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document. The summary should be specific enough to permit the court or opposing counsel to determine whether the privilege asserted applies to that document.

*Burns*, 164 F.R.D. at 594. "At the very least, the party claiming the attorney-client privilege must give evidence that the document 'was created for the purpose of providing or obtaining legal rather than business advice.'" *Payton Lane Nursing Home, Inc.*, 2008 WL 5231831, at *4 (quoting *Export-Import Bank*, 232 F.R.D. at 111); *see NXIVM Corp.*, 241 F.R.D. at 130 ("Without an adequately detailed privilege log, the courts are hamstrung in attempting to decipher the presence and extent of the claimed privilege. To constitute an acceptable privilege log, at a minimum, it should provide facts that would establish each element of the claimed privilege as to each document, and identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.") (internal citation omitted). Therefore, where "a party fails to comply with the requirements of Rule 26(b)(5) when submitting a privilege log, which is inadequate as a matter of law in that the log just does not provide sufficient information to support the privilege, the claim of privilege may be denied." *Trudeau v. N.Y. State Consumer Prot. Bd.*, 237 F.R.D. 325, 334 (N.D.N.Y. 2006) (citing *Johnson v. Bryco Arms*, No. 03 CV 2582, 02 CV 3029, 2005 WL 469612, at *3–4 (E.D.N.Y. Mar.1, 2005)).

In this district, the specific types of information to be included in a privilege log are further delineated in Local Civil Rule 26.2 which provides that, with respect to documents, a party shall set forth "(i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the

addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other." Local Civil Rule 26.2(a)(2)(A). Likewise, with respect to oral communications, a party is required to enumerate "(i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; and (iii) the general subject matter of the communication. *Id.* 26.2 (a)(2)(B).

As such, while "[c]ourts have a degree of discretion in assessing whether a claim of privilege has been adequately supported," a party's privilege log, supporting affidavits and an *in camera* review of the documents themselves are generally required to permit a proper inquiry. *CSC Recovery Corp. v. Daido Steel Co., Ltd.*, 94 CIV. 9294, 1997 WL 661122, at *2 (S.D.N.Y. Oct. 22, 1997); *see Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 78 (S.D.N.Y. 2003) (examining privilege log as well as documents themselves in order to determine applicability of the privilege); *In re OM Securities Litigation*, 226 F.R.D. 579, 583 (N.D. Ohio 2005) (ordering production of documents for *in camera* review along with consideration of privilege log and a "statement setting forth the specific facts, evidence, and law showing why documents are protected" in order to properly determine whether privilege applied); *Koumoulis v. Independent Fin. Mktg. Group, Inc.*, 295 F.R.D. 28, 43 (E.D.N.Y. 2013) (relying on both privilege log and partial *in camera* review of documents and ultimately determining that with respect to documents not provided for *in camera* review "this Court cannot determine . . . whether these documents are protected by the . . . work-product privilege").

Indeed, "[w]hen faced with claims of privilege, courts often undertake in camera review in order to supplement the parties' privilege logs and determine the content of the documents."

*Weber v. Paduano*, No. 02 Civ. 3392, 2003 WL 161340, at *13 (S.D.N.Y. 2003); *see Safeco Ins. Co. of America v. M.E.S., Inc.*, No. 09-CV-3312, 2013 WL 1680684, at *4 (noting that "*[i]n camera* review is 'a practice both long-standing and routine in cases involving claims of privilege.'") (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003)); *see, e.g.*, *In re Dow Corning Corp.,* 261 F.3d 280, 282–83 (2d Cir. 2001) (submitting documents to district court for *in camera* review of attorney-client and work product claims); *In re Richard Roe, Inc.,* 168 F.3d 69, 71 (2d Cir. 1999) (reviewing documents *in camera* to evaluate claims of attorney-client and work product protection); *In re Six Grand Jury Witnesses,* 979 F.2d 939, 942 (2d Cir. 1992) (reviewing cost analyses *in camera* where witnesses claimed preparation was at behest of counsel and constituted work product); *In re Grand Jury Subpoenas Dated Oct. 22, 1991 & Nov. 1, 1991,* 959 F.2d 1158, 1162, 1167 (2d Cir. 1992) (affirming district court's finding, after *in camera* review, that subpoenaed telephone company records did not constitute attorney work product).

It is true that the burden rests squarely on Defendant Bankers Standard to establish the necessary factual basis for its assertion of the attorney-client privilege.  *See CSC Recovery Corp.*, 1997 WL 661122, at *2 ("The law is clear that the burden is on [the party raising the privilege] to establish the factual basis for its claim. . . .").  However, a decision as to whether Defendant can meet its burden in the instant case is entirely premature where the Court lacks the necessary information and documentation to make such a determination.  Indeed, not even the parties themselves seem able to explicitly articulate what documents are actually at issue other than through the sweeping descriptions contained in their respective briefs and affidavits.

In light of the foregoing analysis, the Court finds it inappropriate at this time to engage in a determination of the merits whether the attorney-client privilege applies and, if so, whether the

Subpoena *duces tecum* should be quashed on that basis. The supporting documentation, which would enable such an inquiry, is lacking here. The parties seemingly would have this Court make a sweeping "all or nothing" determination as to privilege. However, such a blanket approach simply does not comport with the fact-intensive inquiry required in such cases. Indeed, once the documents are released, the proverbial bell has been rung and cannot later be unrung.

In this regard, the case of *Koumoulis v. Independent Financial Marketing Group, Inc.* is instructive. In *Koumoulis*, the defendant asserted work product privilege to attempt to shield various documents from production. *Koumoulis*, 295 F.R.D. at 33. Though the defendant in that case provided a privilege log and some documents for *in camera* review, the court noted that the defendant had ultimately failed to meet its burden since "[a]s to the documents written or partially written by an attorney, the privilege log provides insufficient information to determine whether an attorney created these documents because of litigation or whether, absent the threat of future litigation, no comparable communications would have been created." *Id.* at 43. The court went on to state that this deficiency, coupled with the lack of any affidavits which could have otherwise demonstrated support, provided a sufficient reason to deny defendant's claim of privilege. *Id.* Despite such an assertion, however, the court in *Koumoulis* took a more cautious approach, stating:

> [i]n an abundance of caution, the Court will allow Defendants to amend their privilege log to include the required information for the documents that were not reviewed *in camera. See* Fed.R.Civ.P. 26(b)(5)(A). The Parties should then re-consider whether the production of any withheld documents is warranted. . . .

*Id.* Although Bankers Standard has not produced a privilege log in the first instance with respect to categories of documents set forth in the Subpoena *duces tecum* at issue here, this Court finds

that the cautious reasoning set forth in *Koumoulis* is nonetheless applicable.  The Court therefore adopts the approach utilized in *Koumoulis*.

By July 31, 2017, Bankers Standard shall produce a privilege log in conformity with Fed. R. Civ. P. 26 and Local Civil Rule 26.2 with respect to any document that it is withholding on a claim of privilege.  Upon production of the privilege log, the parties shall meet and confer within the following 14 days with respect to those documents on Defendant's log to which the Plaintiff claims the privilege should not apply.  If, after that meet-and-confer, the parties still disagree as to whether the privilege applies, Defendant will have until August 30, 2017 to refile its motion to quash.  At that juncture, Defendant will be required to simultaneously provide to the Court both the privilege log and the documents at issue for an *in camera* review.

Further, the Court is not inclined, based upon the record before it, to permit Plaintiff to take the deposition of Brian Gibbons, Esq. at this time.  Although Attorney Gibbons is not Defendant's counsel of record in this action, there remains a question as to the nature of the attorney-client relationship between Attorney Gibbons (in his role as coverage counsel to Defendant) and Defendant (in its role as the putative client) during the course of the investigations and subsequent coverage determinations rendered with respect to Plaintiff's insurance claims.  Since Plaintiff seeks to question Attorney Gibbons as to a wide range of areas[4] encompassing "[t]he factual background and circumstances related to all aspects of the investigation undertaken by [GCM], with regard to Plaintiff's insurance claims for all dates prior to the time which Defendant had reasonable grounds to reject the insurance claim(s). . . ," this determination is appropriate.  Agulnick Aff., Ex. E (Subpoena *ad testificandum*, Attachment B).

---

[4]        Indeed, the Court finds the scope of the current Subpoena to be overly broad in any event.

The issue can be revisited, if necessary, after the parties comply with the directives above as to the documents at issue.

The attorney-client privilege here — a threshold issue (*i.e.*, the existence and scope of the attorney-client relationship) — bears upon the ultimate determination whether the deposition of Attorney Gibbons should be permitted to go forward, and, if so, the scope of questioning that should be authorized. *See Fox Paine & Co., LLC*, 51 Misc. 3d 1212(A), 37 N.Y.S.3d 207 ("[j]ust because counsel is engaged as coverage counsel, it does not mean that counsel may not provide legal advice to his or her client, which would be subject to attorney-client privilege."); *see 105 St. Assocs., LLC*, 2006 WL 3230292, at *3; *Tudor Ins. Co.*, 2003 WL 21488058, at *3 (recognizing that "communications between Tudor [the insurance carrier] and Thurm & Heller [its coverage counsel] that relate to the provision of legal advice are privileged and need not be disclosed.").

Although depositions of counsel are "not categorically barred," there is a presumption "disfavoring attorney depositions" which "is based on the recognition that even a deposition of counsel limited to relevant and non[-] privileged information risks disrupting the attorney-client relationship and impeding the litigation." *Kleiman ex rel. Kleiman v. Jay Peak, Inc.*, No. 1:10-CV-83, 2012 WL 2498872, at *5 (D. Vt. June 27, 2012) (quoting *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002) (internal quotations omitted)); *see N.Y. v. Solvent Chem. Co.*, 214 F.R.D. 106, 111 (W.D.N.Y. 2003) ("[D]eposition of the attorney [usually] merely embroils the parties and the court in controversies over the attorney-client privilege.") (alteration in original).  In addition, "an attorney's deposition should be precluded when there are other persons available to testify as to the same information or if interrogatories are available." *Alcon Labs., Inc.*, 225 F. Supp. 2d at 343; *see also Dufresne-*

*Simmons v. Wingate, Russotti & Shapiro, LLP*, 53 Misc. 3d 598, 606–07, 39 N.Y.S.3d 621, 628 (N.Y. Sup. Ct. 2016) ("[A]n attorney should only be compelled to testify at a deposition when the proponent establishes that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."); *Solvent Chem. Co.*, 214 F.R.D. at 112 (W.D.N.Y. 2003).

Here, although the record reflects that Attorney Gibbons was involved in certain aspects of the claims process, *see* Agulnick Aff., Exs. A-C, it is not altogether clear, at this stage of the litigation, why Plaintiff is unable to obtain the factual information he seeks directly from Maffucci and DiGiovanna — the individual claims adjusters tasked with conducting the investigations of the Sandy Claim and Vandalism Claim respectively and who were responsible for "advising [Defendant] concerning the scope of the loss and facts that might affect its coverage determination." Maffucci Aff. ¶ 5; DiGiovanna Aff. ¶ 7. There may well be others who are also sources of the information sought. Significantly, Plaintiff's primary reason for seeking to depose Attorney Gibbons appears to be predicated upon a purported contradiction between statements made in the December 19, 2013 and March 19, 2014 letters drafted by Gibbons on behalf of Bankers Standard concerning the extent to which the HVAC system was part of the appraisal process. Agulnick Aff. ¶ 10. Aside from this discrete issue, Plaintiff's only rationale for seeking to depose Attorney Gibbons is based on the assumption that he was intimately involved in the "handling of the Claims in the ordinary course of business for [Defendant]. . . ." *Id*. ¶ 11. However, notwithstanding Plaintiff's characterization of Gibbons' involvement, Gibbons disputes the overall scope of his role in the claims process and asserts that he "was retained by [Defendant] for the purpose of providing legal advice. As such [he] never

acted as a claims adjuster, but rather, provided legal advice to the claims adjuster assigned by [Defendant] to each claim."  Gibbons Aff. ¶ 10; *see* January 30, 2017 Supplemental Affidavit of Brian Gibbons ("Gibbons Supp. Aff."), attached as Ex. 2 to the February 1, 2017 Supplemental Affirmation of Paul C. Ferland ("Ferland Supp. Aff.") [DE 52-1], ¶ 9 ("All coverage determinations were made by [Defendant] unilaterally.  At no time did I make any coverage determinations on behalf of [Defendant] with regard to the Sandy and/or Vandalism Claims.").  Although there remains a factual question as to the overall scope and character of Attorney Gibbons' involvement in the claims process, the Court finds, on this record, that the claims adjusters themselves would have knowledge of the underlying details surrounding the claims investigations and ultimate coverage determinations — information which could be obtained through fact depositions and depositions conducted pursuant to Rule 30(b)(6).  Plaintiff will be required to (1) comply with the Court's ruling above regarding the "privileged" documents and (2) complete all fact and 30(b)(6) depositions before raising the issue of Attorney Gibbons' deposition with the Court in the future.

## V.    CONCLUSION

For the reasons stated in this Memorandum and Order, Defendant's motion to quash is DENIED, at this time, without prejudice.  Once the parties have complied with the directives in this Order, it is the Court's expectation that some of the issues raised here, if not all, will have been resolved.  Attorney Gibbons is not required to respond to the existing Subpoena for his testimony at this time.  To the extent any issue is not resolved, presuming that the parties worked in good faith to achieve a resolution, a revised motion may be brought to the Court promptly.  If the Court finds that any party has not worked in good faith to achieve a resolution, the Court will

take appropriate action.  Plaintiff's Counsel is directed to serve a copy of this Memorandum and

Order on Attorney Gibbons forthwith and to file proof of such service on ECF promptly.


**SO ORDERED.**

Dated: Central Islip, New York
July 17, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge